UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICKY WILLIAM HOWARD,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 3:25-CV-144 JD |

**OPINION AND ORDER**

Plaintiff Micky Howard applied for supplemental security income under Title XVI of the Social Security Act, alleging disability beginning in January 2000. His claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Plaintiff was not disabled. The Appeals Council later denied his request for review, and Plaintiff now seeks judicial review in this Court. For the reasons below, the Court will affirm the Commissioner's decision.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B.  Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

2

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

See Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004).

**C. The ALJ's Decision**

In finding that Plaintiff was not disabled, the ALJ employed the customary five-step analysis. At step two, he found that Plaintiff suffered from the following two severe impairments: "amphetamine abuse disorder and schizoaffective disorder." (ALJ's Decision, R. at 27.) At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of [a Listing]" (*id.*, R. at 29), and that the "paragraph C" criteria are not satisfied to establish a serious and persistent mental disorder (*id.*, R. at 30).

The ALJ also recounted Plaintiff's testimony at the November 2023 hearing. He noted that Plaintiff lives alone in a trailer owned by his friend. He has Medicaid insurance. He was treated at Parkview Behavioral Health beginning in May 2022 but had not been back since May or June 2023. Plaintiff ran out of medication about a month and a half before the hearing. He explained that he could not remember if there were other extended periods of time when he had not taken his medication, commenting that "'I guess I need to see my doctor more often.'" (*Id.*, R. at 32.)

Asked about methamphetamine use, Plaintiff said that "it has been well over a year since he used any, or maybe 7–8 months ago, and he only used once or twice in 2022." (*Id.*) Plaintiff denied working any jobs for cash because it is hard for him to deal with people, and he did not pay for methamphetamine because his friend had some a long time ago. According to Plaintiff, he can't work because he has no transportation and he doesn't have a driver's license, and he sometimes sleeps for days. According to Plaintiff, he was hospitalized due to schizophrenia symptoms. He said he has depression and anxiety and sees and hears things that aren't there. Plaintiff stated that medications aren't helpful. The side effects from medication included weight

gain, dizziness, and light headaches as a result of which his doctor lowered the dose. Plaintiff could not recall the last time he experienced any side effects from the medication. Asked if methamphetamine aggravates the side effects, Plaintiff told the ALJ, "I don't believe so, I don't really mess with that stuff." (*Id.*)

Plaintiff said that he gets a ride with his neighbor once or twice a week to a gas station and tries to shop at the grocery store at least once a month. (*Id.*)

In determining Plaintiff's residual functional capacity ("RFC"),[1] the ALJ found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. (*Id.*, R. at 32.)

The ALJ concluded that Plaintiff has the RFC to perform

> a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform simple, routine tasks and instructions throughout the workday. The claimant can have occasional interactions with others, including coworkers, supervisors, and the public. The claimant can receive instructions, directions, and criticism from the supervisor. The claimant can respond or adapt to the changes, cope with the stress, and engage in the decision making required of such tasks.

(*Id.*, R. at 31.) In his decision, the ALJ repeatedly noted the contrast between Plaintiff's condition when he was not receiving treatment for his mental health condition or was under the influence of methamphetamines, and when he was being treated. According to the ALJ, the "facts fail[ed] to reflect greater limitations of function outside the realm of non-treatment." (*Id.*, R. at 33–34.)

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

5

The ALJ posed a hypothetical question to the vocational expert ("VE") based on his RFC findings. The VE testified that there are jobs in the national economy in significant numbers that a hypothetical person with Plaintiff's RFC could perform: cleaner (110,000 jobs), laundry worker (125,000 jobs), and packager / sealing machine tender (136,000 jobs). (*Id.*, R. at 36.) Relying on the VE's testimony, the ALJ concluded "that, considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*, R. at 36.) As a result, the ALJ found Plaintiff to be not disabled.

**C. Discussion**

In his appeal, Plaintiff advances three arguments. First, he contends that the ALJ erred by failing to develop the record by declining to subpoena mental health treatment records from Parkview Behavioral Health. Second, the ALJ improperly rejected the consultative examiner's psychological opinion based on an incomplete evidentiary record. And last, Plaintiff argues that the ALJ's findings aren't supported by substantial evidence and are not backed up by logical explanation.

**(1)** *The ALJ's Denial of the Subpoena Request*

About two weeks before the hearing, Plaintiff's then-counsel sent a letter to the ALJ requesting that he subpoena Parkview Behavioral Health to provide Plaintiff's medical records dated after January 1, 2023. (R. at 327.) Plaintiff's counsel reiterated the same request at the hearing. The ALJ denied the motion, but granted Plaintiff's counsel thirty days to obtain the requested records and submit them to the agency. In the decision, the ALJ explained that he

denied issuing the subpoena because of a lack of due diligence on the part of Plaintiff and his counsel in obtaining the records on their own. (ALJ's Decision, R. at 24.) No matter, counsel obtained the records after the hearing and submitted them for the ALJ's review as directed. (*Id.*, R. at 25 ("Further, the claimant's representative was given 30 days to submit additional evidence, and the Parkview Behavioral Health records were received within that timeframe. The request for subpoena is denied.")

Reading this, one may say "no harm, no foul," but Plaintiff is asking that the Court remand for further consideration based on the ALJ's refusal to issue the subpoena. To begin with, while the ALJ "has a basic obligation to develop a full and fair record," *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014), Plaintiff does not explain what else he expected to obtain from Parkview Behavioral Health. To be sure, he speculates what the records might contain (Pl.'s Br., DE 12 at 6 ("The prejudicial impact of the ALJ's failure to subpoena the Parkview records cannot be overstated. These records *likely* contained contemporaneous descriptions of disorganized thought, persecutory delusions, hallucinations, poor impulse control, treatment response, and recommendations by treating psychiatrists." (emphasis added))), but he has not shown that any records are actually missing and that the ALJ knew or should have known this. Instead, referring to 457 pages of records from Parkview Behavioral Health, Plaintiff states without elaboration that the exhibits "reflect fragmentary documentation that lacks continuity and fails to provide a longitudinal picture of Plaintiff's functional psychiatric trajectory." (*Id.*) Not to mention, Plaintiff fails to argue that the ALJ did not consider the Parkview records after the hearing. He boldly states that "[t]he ALJ's assertion 'all relevant records have been received' is demonstrably false" (*id.*), but provides not a shred of information as to why that is true. This does not establish that any substantive records are missing or that the

7

ALJ failed to consider them, contrary to his representation in the decision, making the failure to subpoena the records inconsequential.

What's more, Plaintiff hasn't shown that the ALJ did anything wrong. A subpoena is used when a facility or a doctor's office refuses to comply with the agency's or the claimant's request for documents. *See* 20 C.F.R. § 404.950(d)(1) ("When it is reasonably necessary for the full presentation of a case, an administrative law judge . . . may . . . issue subpoenas . . . .") But Plaintiff's attorney's attempt to obtain the medical records was hindered by his own failures, such as not providing necessary information, and suspending the request without addressing those deficiencies. Despite these failures, the ALJ allowed Plaintiff's counsel thirty days after the hearing to obtain the records. Counsel then timely supplemented the record, without indicating that the supplemental filings were incomplete. Thus, when the ALJ denied the subpoena request, he only spared Parkview Behavioral Health from duplicating their efforts and spared everyone else from dealing with duplicative filings. Although Plaintiff claims otherwise, he has not explained why this is the case.

Finally, to the extent that Plaintiff complains that the ALJ violated his due process rights, his argument is unavailing. "Due process requires that a Social Security disability claimant be offered a 'full and fair' hearing. This standard is violated if a claimant is not offered a chance to present evidence or where the ALJ exhibits bias or animus against the claimant during a hearing." *Davenport v. Astrue*, 417 F. App'x 544, 546–47 (7th Cir. 2011) (citations omitted). Although Plaintiff argues that the ALJ deprived him of the opportunity to present the medical records, that claim is unsubstantiated. Plaintiff participated in a hearing before an ALJ, while represented by counsel. His counsel identified treatment records that were still outstanding, and the ALJ granted thirty days to submit them. Counsel did so and the records were added to the

case file. Given the sequence of events, the Court fails to find a due process violation or any error, let alone one that would warrant remand.

(2) *Consultative Examiner's Psychological Opinion*

Plaintiff argues that the ALJ erroneously rejected the opinion of psychological consultant Dr. Russel Coulter-Kern who examined Plaintiff at the agency's request. According to Plaintiff, the ALJ ignored the fact that Dr. Coulter-Kern's opinion was both supported by his own examination findings and consistent with the record, two of the most important factors in evaluating medical opinions.

Under the regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ must explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). When considering the persuasiveness of any medical opinion, an ALJ must consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 C.F.R. §§ 404.1520(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, even though the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). Failure to adequately

9

discuss supportability and consistency requires remand. *See Tammy M. v. Saul*, 2021 WL 2451907, at *7–8 (N.D. Ind. June 16, 2021). The more consistent the medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). For a provider's opinion to be supportable, it must be based on "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "At the end of the day, once the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (quotation marks and citation omitted).

The Court finds that the ALJ's evaluation of Dr. Coulter-Kern's opinion did not constitute a reversible error. Dr. Coulter-Kern examined Plaintiff on September 28, 2022, about two months after Plaintiff protectively applied for supplemental security income benefits. Dr. Coulter-Kern issued a report of his findings which the ALJ summarized in his decision. The ALJ noted that Dr. Coulter-Kern found that Plaintiff "had moderate deficits remembering even single step instructions, moderate to severe deficits in attention and concentration, and extreme deficits in responding to others and coping with stress." (ALJ's Decision, R. at 34.) In reviewing the opinion, the ALJ recognized that Dr. Coulter-Kern was a specialist who had special knowledge about the social security disability program, but found that Dr. Coulter-Kern's limitations were unsupported by his own examination: "Dr. Coulter-Kern has specialization and program

10

knowledge. However, he did not explain or elaborate on these limitations with any supportive comments . . . ." (*Id.*) In addition, the ALJ observed that, like other health care providers who encountered Plaintiff when he wasn't under the influence of methamphetamine, Dr. Coulter-Kern described Plaintiff to be cooperative. (*Id.*, R. at 29–30.)

Next, the ALJ determined that Dr. Coulter-Kern's opinion diverged from the evidence in the record: ". . . this is without support within the treatment notes except within the context of not taking medications or within the context of using amphetamine. These findings are only two months after the protective filing date. These findings are not accompanied by ongoing treatment documented as received or even as sought beyond May 2022." (*Id.*) In fact, the overarching factor for the ALJ discounting Dr. Coulter-Kern's opinion was the ALJ's belief that Plaintiff withheld crucial information when recounting his symptoms, specifically that he was using methamphetamine and not taking his medications. For example, the ALJ explained that "Dr. Coulter-Kern concluded the claimant would have severe to extreme difficulty responding appropriately to supervision and coworkers, but the claimant also told Dr. Coulter-Kern that he does not use street drugs or engaged in substance abuse treatment, which is patently false based on the various admissions of the claimant in other areas of the record where he admitted or drug screens confirmed he was using methamphetamine, cocaine, and cannabis." (*See id.*, R. at 29 (citing Hospital Records, R. at 462, 484–490, 513, 519, 523, 541, 545, 549, 553, 558, 564; 759, 762, 787, 788, 793).) Similarly, the ALJ reasoned that Plaintiff's "attention and concentration were described as appropriate when he was not engaged in substance abuse and poor or distractible when he was using substances. Dr. Coulter-Kern noted the claimant performed serial counting but he made some errors, so he concluded the claimant would have moderate to severe difficulty maintaining attention and concentration, but again this is largely contrasted by the

11

record when the claimant was abstinent from substances." (*Id.*, R. at 30 (citing Hospital Records, R. at 465, 12, 484–490, 561, 780, 787)). In light of this assessment, the ALJ found Dr. Coulter-Kern's findings "not persuasive in establishing twelve months of limitations of function, despite treatment and in the context of abstinence."

Although Plaintiff insists that the ALJ failed to support his findings about consistency and supportability with citations to the record and neglected to compare the opinion to the later-acquired records from Parkview Behavioral Health, the ALJ did provide the citations as noted above, and almost all of them refer to the records that Plaintiff claims were omitted. That the ALJ discussed this evidence earlier in his decision rather than repeating it when assessing Dr. Coulter-Kern's opinion is of little consequence, because courts consider all parts of an ALJ's decision in determining whether an ALJ properly assessed an opinion. *See Deloney v. Saul*, 840 F. App'x 1, 5 (7th Cir. 2020) (ALJ's analysis of a medical opinion can find support "elsewhere in his decision"); *Paul M. v. Saul*, No. 19 C 4581, 2021 WL 794981, at *4 (N.D. Ill. Mar. 2, 2021) ("If separated from the rest of her decision, the ALJ's opinion evaluation appears to lack the support of substantial evidence. However, the court must consider the entire decision as a whole and not just a specific portion of the decision.").

Plaintiff criticizes the ALJ for considering the prior administrative medical findings by Kari Kennedy, Psy.D., and Joelle J. Larsen, Ph.D., as more persuasive than Dr. Coulter-Kern's opinion. Specifically, he faults the ALJ because the two state agency psychologists made their determinations before Plaintiff's 2023 hospitalizations. But Drs. Kennedy and Larsen did review the records from Plaintiff's 2022 hospitalization, which took place under very similar circumstances. In particular, as with the 2023 hospitalizations, Plaintiff was assessed with a psychotic disorder following the use of amphetamines and not taking prescribed medications.

Plaintiff has not shown that the later hospitalizations altered the picture so much that the ALJ could not rely on the experts' earlier findings. *See Massaglia v. Saul*, 805 F. App'x 406, 410 (7th Cir. 2020) ("An ALJ may rely on a reviewing physician's assessment unless later evidence containing new, significant medical diagnoses 'changed the picture so much' that it reasonably could have changed the reviewing physician's opinion."); *see also Durham v. Kijakazi*, 53 F.4th 1089, 1094–96 (7th Cir. 2022) (an ALJ may rely on prior administrative medical findings as well as later-submitted treatment records so long as an ALJ doesn't interpret later medical tests on his own and provided that the hospital visit cannot be characterized as having presented "new" developments, much less potentially dispositive ones, that require an additional opinion of a medical expert). Importantly, Drs. Kennedy and Larsen reviewed Dr. Coulter-Kern's report, yet still opined that his limitations were less severe than assessed by Dr. Coulter-Kern. What's more, while adopting their conclusions, the ALJ found that additional restrictions were necessary based on the totality of the evidence. (*See* ALJ's Decision, R. at 35 (reducing detailed or semi-skilled work to "simple routine tasks in an abundance of caution").)

Although Plaintiff does not raise this issue in his opening brief,[2] the Court is mindful that, in assessing Plaintiff's RFC, the ALJ repeatedly noted that Plaintiff failed to seek treatment or take his prescribed medications for extended periods, which led to his psychiatric hospitalizations. In contrast, once Plaintiff received treatment, his mental state normalized. (ALJ's Decision, R. at 33–34.) "Courts have been very clear that an ALJ must account for the effect that mental illness may have on a claimant's treatment history." *Barnes v. Colvin*, 80 F. Supp. 3d 881, 886 (N.D. Ill. 2015). After all, "mental illness may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454

---

[2] Plaintiff filed no reply brief.

F.3d 627, 630 (7th Cir. 2006). But while this may be true of mental illness in general, Plaintiff must point to evidence in the record suggesting that his mental impairments prevented him from submitting to mental health treatment. *See Tallar v. Kijakazi*, No. 21-CV-611-SCD, 2022 U.S. Dist. LEXIS 162260, at *24 (E.D. Wis. Aug. 30, 2022) (finding the ALJ could infer adequate symptom control and discount limitations where claimant failed to show mental impairments prevented treatment). "It [is Plaintiff's] burden to produce records to support the severity of [his] alleged mental impairments." *Fender v. Comm'r of Soc. Sec.*, No. 1:24-cv-228-ALT, 2025 U.S. Dist. LEXIS 184346, at *14 (N.D. Ind. Sep. 18, 2025) (citing *Thaddeus R. v. King*, No. 24 C 4395, 2025 U.S. Dist. LEXIS 20584, 2025 WL 405040, at *4 (N.D. Ill. Feb. 5, 2025) (acknowledging the lack of mental health treatment in the record and stating that it was the claimant's burden to produce records supporting his alleged mental impairments).

True, Plaintiff briefly suggests that he suffered from medication side effects, but he makes this argument in the abstract, without any citation to the record and without any showing that the side effects interfered with getting treatment. (Pl.'s Br., DE 12 at 11.) Nor does he support his contention with any case law. To the extent that Plaintiff intends to say that he forewent treatment due to the medication side effects, such an unsupported argument is waived. *See Puffer v. Allstate Ins.*, 675 F.3d 709, 718 (7th Cir. 2012) ("[E]ven arguments that have been raised may still be waived on appeal if they are underdeveloped, conclusory, or unsupported by law."); *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (perfunctory and undeveloped arguments are waived) (citation omitted). But regardless of waiver, the ALJ asked Plaintiff about any medication side effects, and stated Plaintiff's answer in the decision: "[Plaintiff] noted he had side effects with medications including weight gain, dizziness, and light-headedness, and that he told his doctor so they lowered the dose. He could not recall the last time he had side

effects. When asked if methamphetamine made his side effects worse, he commented, 'I don't believe so, I don't really mess with that stuff.'" (ALJ's Decision, R. at 32; *see also* R. at 56–57.) Ultimately the ALJ concluded that "[t]here is no evidence of adverse side effects from treatment or medication that would prevent the claimant from performing competitive work activity as described above on a regular and continuing basis." (*Id*. at 35.) In other words, the ALJ considered what Plaintiff may argue is a stated reason for his medical noncompliance as required by SSR 16-3p.[3]

For all these reasons, the Court finds no error in the ALJ's treatment of Dr. Coulter-Kern's opinion that would require remand.

### (3) *Substantial Evidence and the Logical Bridge*

Plaintiff argues that the ALJ's findings aren't supported by substantial evidence and lack a logical explanation.

An ALJ is charged with determining an individual's RFC, meaning "what an individual can still do despite his or her limitations." SSR 96-8p. The ALJ makes that determination based on medical evidence as well as other evidence, including testimony by the claimant. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). In making a proper RFC determination, an ALJ must consider all the relevant evidence in the record, even evidence

---

[3] While Plaintiff does not argue in his brief that he had no means to obtain healthcare, the ALJ appears to have considered this question when he asked Plaintiff whether he had medical insurance (Plaintiff answered that he had Medicaid). *Cf. Nicholson v. Astrue*, 341 F. App'x 248, 252 (7th Cir. 2009) ("Nicholson also testified that he was not seeing a psychiatrist or psychologist for his depression. He did not hint that his infrequent treatment or failure to seek treatment was due to inability to pay for treatment. . . . This lack of treatment supports the ALJ's adverse credibility finding."); *see also* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) ("Where "the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.")

relating to limitations that are not severe. *Id.*; see 20 C.F.R. § 404.1529(a). The ALJ must also "articulate in a rational manner the reasons for his assessment of a claimant's residual functional capacity," *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009), in a way that builds "an accurate and logical bridge from the evidence to the conclusion." *Giles v. Astrue,* 483, 487 (7th Cir. 2007).

> An ALJ's failure to comply with SSR 96-8p's requirements is a sufficient basis, by itself, for us to reverse an ALJ's decision. *See, e.g., Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("Contrary to SSR 96–8p, however, the ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision."); *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020) (explaining that although an ALJ's failure to comply with SSR 96-8p "does not necessarily require remand," we must be satisfied that an ALJ considered SSR 96-8p's requirements and produced a decision supported by substantial evidence). But we may affirm an ALJ's decision that does not conform with SSR 96-8p's requirements if we are satisfied that the ALJ "buil[t] an accurate and logical bridge from the evidence to her conclusion." *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (quotation omitted). Essentially, an ALJ's RFC analysis "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

*Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022).

The ALJ assessed Plaintiff's RFC after considering objective evidence, treatment history, medication use, medical opinions, and the effects of Plaintiff's illegal drugs. This evidence is such that a reasonable mind may accept as adequate to support the ALJ's conclusions, so it is substantial evidence. *Craft*, 539 F.3d at 673. Accordingly, the Court agrees with the Commissioner that the ALJ based his assessment on substantial evidence.

Beginning with objective evidence, the ALJ relied on numerous accounts of Plaintiff's examinations. (R. at 29–30, 33, 34 (citing R. at 438, 465, 486, 488, 497, 518, 553, 561, 780, 787)). The ALJ observed that Plaintiff exhibited normal mental status, such as appropriate concentration and attention and pleasant demeanor, when not engaged in substance abuse, but

16

exhibited abnormal findings when using substances.[4] (ALJ's Decision, R. at 29–30.) "[T]he regulations specifically permit an ALJ to rely on [mental status] examinations as evidence of disability," *Moyer v. O'Malley*, No. 23-2599, 2024 WL 1411565, at *4 (7th Cir. April 2, 2024) (citing 20 C.F.R. Part 404, Subpt. P, App'x 1 § 12.00(C)(2)(c)), and Plaintiff has not shown that the ALJ misrepresented the information in the records or that other records contradict the ALJ's conclusion.

The ALJ also relied on Plaintiff's treatment history, which, as discussed above, contains substantial gaps between December 2019 and May 2022, and between May 2022 and January 2023, with no clear indication that his illness or any other circumstances interfered with his ability to seek or receive treatment.

Next, as noted above, the ALJ based his RFC finding in part on the prior administrative medical findings from reviewing psychologists Kari Kennedy, Psy.D., and Joelle Larsen, Ph.D., each of whom concluded that Plaintiff could understand, remember, and carry out detailed but not complex tasks; relate on a superficial and ongoing basis with co-workers and supervisors; attend to tasks for a sufficient period to complete them; and manage the stresses involved with detailed work-related tasks. (ALJ's Decision, R. at 34–35) (citing R. 68–69, 75–76). The ALJ found their conclusions partially persuasive because both doctors "have program knowledge and specialization, and they gave supporting comments for their findings." (*Id.*, R. at 34.) The ALJ

---

[4] Plaintiff does not argue that the ALJ violated SSR 13-2p, so any such argument is waived. *See Hall*, 906 F.3d at 644. Under this social security ruling, the ALJ must first conduct the standard five-step sequential evaluation—including consideration of any mental impairments impacted by substance use—before determining whether alcohol or drug use is material to the finding of disability. It is only after finding that the claimant is disabled, and there is medical evidence of drug addiction or alcoholism, that the ALJ may proceed under 20 C.F.R. § 404.1535 to decide whether the claimant would still be disabled in the absence of substance use. *See Simpson v. Berryhill*, No. 17-CV-2299, 2018 WL 2238593, at *11 (N.D. Ill. May 16, 2018) (quoting *Hundley v. Colvin*, 2016 WL 423548, at *5 (D.S.C. Jan. 12, 2016) (citing, *inter alia*, 20 C.F.R. §§ 404.1535, 416.935)). While the ALJ was not as methodical as SSR 13-2p sets forth, he did not violate the ruling. The ALJ reiterated multiple times that outside "the realm of non-treatment" and "drug use" (ALJ's Decision, R. at 33–34), the facts fail to reflect greater functional limitations than those assessed in the RFC.

also found their conclusions generally consistent with the record, even though he determined that Plaintiff required additional restrictions beyond those assessed by the two doctors.

Finally, the ALJ discussed Plaintiff's psychiatric hospitalizations, determining that each was precipitated by his illegal drug abuse, as supported by the records associated with each admission.

Based on these considerations, the Court cannot agree with Plaintiff that the ALJ's decision is unsupported by substantial evidence; nor can it agree that the ALJ failed to build a logical bridge from the evidence to the conclusion. The ALJ provided an adequate narrative discussion for his RFC findings, outlining a path of reasoning that the Court can follow. In assessing Plaintiff's RFC, the ALJ was "subject only to the most minimal of articulation requirements," *Warnell*, 97 F.4th at 1053, which he met. Plaintiff's disagreement with the ALJ's conclusions shows, at most, that reasonable minds can differ, and when reasonable minds can differ, the ALJ's decision must be affirmed. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### E. Conclusion

For these reasons, the Court AFFIRMS the Commissioner's decision. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: February 9, 2026

                                            /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court